## Hollingsworth et al. v. Hollingsworth
(Decided March 1, 1938.)

FLEM D. SAMPSON for appellants.

WILLIAM LEWIS & SON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Arnold Hollingsworth, and the appellee, Hettie McFadden Hollingsworth, were married August 6, 1931, and lived together as husband and wife until August 9, 1933. In November, 1935, Arnold Hollingsworth brought an action for divorce on the ground that the defendant had abandoned him without like fault on his part, and that they had lived separate and apart for more than one year. He also alleged in his petition that at the time he and the defendant were married she was pregnant by another man without his knowledge. The defendant filed an answer and counterclaim in which she denied she had abandoned the plaintiff; and alleged affirmatively that he had abandoned her. She admitted that she was pregnant by another man at the time of the marriage, but denied that this was without plaintiff's knowledge, and alleged that he knew about her condition and that they continued to live together as husband and wife for more than two years after the birth of the child. The child was born about six weeks after the marriage. She further alleged that at the time of their marriage the plaintiff had no property of any kind, and that she owned certain personal property which was then in the plaintiff's possession; that shortly after their marriage she purchased a certain tract of land for which she paid the sum of $950; and that the plaintiff paid no part of the purchase price, but, without her knowledge and consent, had the deed made in his own name. She asked that she be granted a divorce from the plaintiff, and that he be required to convey to her the land described in her counterclaim.

The plaintiff did not file a reply to the answer and counterclaim, but on March 2, 1936, his father and mother, Mr. and Mrs. Steve Hollingsworth, filed an intervening petition in which they undertook to traverse the averments of the answer and counterclaim in regard to the ownership of the land. In a second paragraph they alleged that shortly after the marriage the defendant transferred to her husband, the plaintiff, money deposited in her name in the National Bank of London amounting to $1,776.99; that thereafter this money be-

longed to the plaintiff, and with it he purchased and paid for the land in dispute. They further alleged that immediately after the marriage they entered into a contract with the plaintiff and defendant to furnish them board and to nurse and care for the defendant during her confinement and illness, and that they had boarded and cared for them for three years. They alleged that plaintiff and defendant were indebted to them in the sum of $1,642.50 for nursing and caring for defendant while she was sick and for boarding and lodging plaintiff and defendant throughout the period of three years. They asked for a judgment for that amount, and that they be adjudged a lien upon the land described in the counterclaim. A motion to strike the intervening petition was overruled, and the defendant filed an answer traversing its affirmative allegations. A large amount of proof was heard, and, upon submission of the case, the court granted the defendant an absolute divorce and adjudged that she was entitled to the land described in her counterclaim, and ordered the plaintiff to convey it to her, and, if he failed to do so, the master commissioner was directed to execute and deliver to the defendant a deed conveying to her the land for and upon behalf of the plaintiff. The claim of the intervening petitioners was dismissed. The plaintiff and the intervening petitioners have appealed.

The proof shows that plaintiff never owned any property of any kind prior to his marriage to the defendant, and that his father and mother owned no real estate and no personal property except a few household goods. A few months before her marriage, the defendant received about $2,200 from the United States War Risk Insurance Bureau, which was her share of the proceeds of a war risk insurance policy on the life of her brother who died in the World War. On August 4, 1931, the day after the marriage, she transferred to her husband $1,566.99, the amount of a time deposit in the National Bank of London. He drew out $166.99 on August 6, 1931, and the remainder of the deposit on August 20, 1931, the day the deed to him was executed. The appellee was not present when the deed was executed and delivered to her husband.

Although the plaintiff had alleged in his petition that the defendant at the time of the marriage was pregnant by another man without his knowledge, he

testified that he knew of her condition and married her because she promised to turn over to him all of her property. On direct examination, he said:

> "She told me that she was in this condition and she did not have anyone to take care of her and that she wanted to give me what she had to take care of her through this, and if she got well she would go on about her business and I should still have what she had for taking care of her."

Soon after the land was purchased, the plaintiff and defendant and plaintiff's father and mother moved into the house on the land and lived there in comparative peace until defendant's money was exhausted. She then borrowed $100 from her father, and, according to her testimony, as soon as this was spent the plaintiff sent her to her father's home and told her not to return. If the testimony of the defendant and her witnesses is true, this was the fruition of a scheme to obtain her money and then cast her aside. Aaron Reams, who had known the plaintiff for a number of years, testified that plaintiff said to him three or four months before the marriage:

> "Lets make it up, you take Aunt Martha and I will take Hettie, lets make it up that you take her and I will take Hettie. I don't give a damn for her but I will take what she has got and what I can get off of her, and then I will kick her and send her back to Uncle Bill."

At the time of the marriage the defendant was about 37 years of age and the plaintiff was 17. It is argued that an inexperienced youth was imposed upon by a woman of mature years, but the proof shows that plaintiff was fully able to take care of himself. On the other hand, a number of witnesses who had known the defendant all of her life testified that she did not have sufficient mental capacity to transact business, and some stated that she was feeble-minded. Dr. J. W. Crook, a physician who had known her for more than 25 years, was asked to describe her mental condition, and said:

> "Her mental condition, as I remember, has not changed any during the years I have known her, I hardly know how to describe it Judge, the status of her mental condition, other than to say she has the

mind more or less of the average ten or twelve year old child.''

Without detailing the evidence further, it is sufficient to say that it fully sustains the chancellor's finding.

The judgment is affirmed.